# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

M. KATHLEEN McKINNEY, Regional Director of Region 15 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,

    Petitioner,

v.

STARBUCKS CORPORATION,

    Respondent.

No. 2:22-cv-02292-SHL-cgc

## RESPONDENT'S MEMORANDUM IN SUPPORT OF ITS EMERGENCY MOTION TO STAY INJUNCTIVE RELIEF PENDING APPEAL OR IN THE ALTERNATIVE EXTEND THE COMPLIANCE DEADLINE

In accordance with Federal Rule of Appellate Procedure 8 and Federal Rule of Civil Procedure 62, Respondent Starbucks Corporation ("Respondent" or "Starbucks") moves the Court to stay its order dated August 18, 2022, granting in part Petitioner's Motion for a Temporary Injunction under Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j) (the "Order") [Doc 86] pending the outcome of Respondent's appeal of that Order. In its Order, the Court ordered that Starbucks: make an offer of employment to the Alleged Discriminatees within five days, expunge Cara "Nikki" Taylor's January 14, 2022 discipline within five days, and post the Court's forty-seven-page Order in the Memphis Store. Doc. 86 at 46-47. The Order also requires Starbucks to refrain from discriminating against employees because of their support for the Union, more closely supervising or monitoring employees because of their Union support, closing the Memphis Store café to prevent employees from engaging in protected concerted activity, and otherwise interfering with employee's Section 7 rights. Doc. 47.

Complying with the Court's injunction before the Sixth Circuit has an opportunity to address the appropriateness of the Order is impractical and will cause unnecessary disruption to the lives of the Alleged Discriminatees, current partners at the Memphis Store who may lose their jobs or have their hours reduced, and current partners at the Memphis Store who will face a tumultuous period of disruption and uncertainty at work. Starbucks will be harmed by reinstating the Alleged Discriminatees because some of their conduct post separation is incompatible with employment at Starbucks and will introduce an unnecessary degree of contentiousness into the workplace, thereby disrupting operations. Starbucks will also suffer irreparable harm from complying with the injunction in the form of non-recoverable costs of compliance, business disruption, and a loss of goodwill. Should Starbucks prevail on appeal, Starbucks will be forced to suffer these irreparable injuries *twice* over a period of months. The balance of equities therefore weighs in favor of granting a brief stay of the injunctive order while Starbucks appeals.

## I.   STANDARD OF REVIEW

A Court may choose to suspend an injunction while an appeal is pending. *See* Fed. R. Civ. P. 62(c) ("While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."). Federal Rule of Appellate Procedure 8(a)(1)(A) further provides that a party must move in the District Court for an order staying its judgment or order pending appeal, and Federal Rule of Appellate Procedure 8(a)(1)(C) provides that a party may ask the Court to suspend, modify, restore, or grant an injunction pending appeal.

To determine whether a stay is appropriate, a court is to consider the four factors traditionally considered in evaluating a motion for a preliminary injunction. *Commonwealth v.*

*Beshear*, 981 F.3d 505, 508 (6th Cir. 2020); *McKinney v. Kellogg Co.,* No. 14-2272, 2014 WL 4954351, at *8 (W.D. Tenn. Oct. 2, 2014) (applying the traditional four-factor test in determining whether to stay an injunction issued pursuant to Section 10(j) of the National Labor Relations Act). These factors are: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Beshear*, 981 F.3d at 508 (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Beshear*, 981 F.3d at 508 (quoting *Mich. Coal of Radioactive Mat. Users, Inc.*, 945 F.2d at 153).

**II.    ARGUMENT**

The balance of all factors weighs in favor of a stay pending appeal. Starbucks has a strong likelihood of success on the merits of its appeal and will suffer irreparable harm from complying with the Court's Order during the pendency of the appeal. On the other hand, the Board, the Union, and the Alleged Discriminatees will not suffer irreparable harm from a short additional delay while Starbucks appeals.[1] In fact, staying the Order pending appeal is also in their best interests and, therefore, the public's interest. The Court should stay implementation of its Order pending the outcome of Starbucks' appeal.

---

[1] The Union filed the unfair labor practice charge concerning the separations on February 9, 2022, yet the National Labor Relations Board ("the Board") did not seek Section 10(j) relief until May 10, 2022. The Board did not set an administrative hearing until July 8, 2022. A hearing is now set to begin on September 12, 2022.

### A. Starbucks Has a Likelihood of Success on the Merits of its Appeal.

A movant can satisfy its burden as to the first factor by showing there are "serious questions going to the merits." *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 220 (6th Cir. 2016) (quoting *Mich. Coal of Radioactive Mat. Users, Inc.*, 945 F.2d at 153). Under current law in the Sixth Circuit, district courts must make two findings to grant Section 10(j) relief: (1) there is "reasonable cause to believe" that the employer has violated the Act, and (2) that temporary injunctive relief to address such alleged violations would be "just and proper." *McKinney v. Ozburn-Hessey Logistics, LLC*, 875 F.3d 333, 339 (6th Cir. 2017). On appeal, the Sixth Circuit reviews a "district court's finding that the Board's theory is substantial *de novo*" and reviews "the finding that there are facts consistent with the Board's legal theory for clear error." *Ozburn-Hessey Logistics, LLC*, 875 F.3d at 339 (quoting *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 29 (6th Cir. 1988)). The Sixth Circuit reviews a district court's determination as to just and proper for abuse of discretion. *Id.* "Such abuse exists if the district court 'relie[d] on erroneous findings of fact, applie[d] the wrong legal standard, misapplie[d] the correct legal standard when reaching a conclusion, or ma[de] a clear error of judgment.'" *Nafziger v. McDermott Intern., Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (quoting *Reeb v. Ohio Dep't of Rehab, and Corr.*, 435 F.3d 639, 644 (6th Cir. 2006)).

In this case, Starbucks will succeed on the merits of its appeal for several reasons. First, the Court's finding of reasonable cause to believe a violation of the Act occurred does not properly hold Petitioner to its burden of proof. For example, Petitioner asserts without evidence[2] that

---

[2] For example, while the Board presented Taylor's testimony that she discussed two potential disciplinary actions with Morton, it presented no evidence that both disciplinary actions were

4

Starbucks issued Taylor two disciplinary actions and gives no weight to the contradictory evidence that Morton did not in fact issue Taylor two disciplinary actions, merely accepting as true Petitioner's assertions. Doc. 86 at 8, 26. The Court also considered purely circumstantial evidence that Cedric Morton had knowledge of organizing activity at the Memphis Store by January 14, 2022, while entirely disregarding Morton's direct testimony that he *did not* have knowledge of organizing activity at that time. *Id.* at 24.

Second, the Court discounted Starbucks' comparator evidence in applying the *Wright Line* standard and concluded there is reason to believe Starbucks' termination justifications are pretextual. Doc. 86 at 36. The Court correctly recognized that Starbucks has previously separated employees for engaging in the same behavior. *Id.* The Court then "disregarded" this evidence because Starbucks did not rely on this comparator evidence in deciding to separate the Alleged Discriminatees. *Id.* As an initial matter, the record evidence is that Starbucks *did* consider the comparator evidence prior to the terminations. Steve Fox testified he reviewed comparator evidence prior to making a recommendation to Cedric Morton. Doc. 75 at 362:9-19 ("my job was to kind of find what we do normally, consistently in that space. So I then kind of went in and looked for similar circumstances to these particular concerns and issues and was able to find a few examples of that."); Doc. 75 at 374:18-375:3.

However, even if Starbucks did not consider the comparators prior to separating the Alleged Discriminatees, disregarding the comparator evidence on this basis is also a misapplication of the *Wright Line* standard. In applying *Wright Line*, whether an employer considered comparators in deciding to discharge a particular employee is irrelevant. Comparator

---

*actually* issued to Taylor or placed in her employee record. Thus, they did not present evidence that Starbucks actually issued her two disciplinary actions that day.

evidence is instead used to establish that an employer acted in accordance with its own past practice in comparable situations, thus demonstrating a lack of pretext. *See, e.g., Windsor Redding Care Ctr. v. Nat'l Labor Relations Bd.*, 944 F.3d 294, 299-301 (D.C. Cir. 2019) (reviewing comparator evidence in the context of pretext). The Court erred by disregarding this evidence that Starbucks acted in accordance with its own past practice and concluded that there is reasonable cause to believe the terminations violated the Act.

Third, the Court concluded that the stated reason for the terminations was pretextual, in part, because "there is no evidence in the record to support the existence of any safety concerns that night." Doc. 86 at 36-37. This assertion is not supported by the record. The evidence showed that the Memphis Store is in an area of Memphis that can be unsafe; that the store recently had a break in; and that partners often feel unsafe walking to their cars alone. Thus, while there may have been testimony that the Alleged Discriminatees did not *subjectively* feel unsafe that night, the objective evidence shows that they were in fact putting their safety at risk. Starbucks' safety and security policies are not enforced based on whether partners subjectively feel unsafe while violating the policies. Starbucks created the safety policies and procedures after a tragically fatal incident in one of its stores. They are in place to ensure partners do not engage in behavior which makes them unsafe, and if Starbucks did not enforce its policies when partners did not feel unsafe while violating them, these policies would cease to establish any meaningful standard of conduct for partners across the country.

Fourth, the Court's just and proper analysis relies on insufficient evidence and elevates the subjective feelings of one partner over the objective evidence that there has been no chilling effect in the Memphis Store. The Court relies on Ax Heiberg's testimony that he is fearful of serving on the bargaining committee and that, for some unspecified period of time after the separations, some

6

partners stopped wearing Union pins as evidence that there was a chilling effect in the Memphis Store. This reliance on subjective and hearsay evidence is unwarranted when there is objective evidence in the record that the Memphis Store partners were not chilled in their support of the Union. They continued organizing at the store, they made posters in the store, they participated in the demonstrations and, most tellingly, voted in favor of Union representation. Doc. 73 at 274:6-20; 227:19-228:13; Doc. 75 at 203:5-204:6, 204:19-205:5-206:6; Ex. 37.

Fifth, the Court did not make a finding that a return to the status quo is possible as is required in the Sixth Circuit. *Ozburn-Hessey Logistics, LLC*, 875 F.3d at 339. ("A temporary injunction is just and proper if it is 'necessary to return the parties to status quo pending the Board's proceedings in order to protect the Board's remedial powers under the NLRA, *and whether achieving status quo is possible*.'") (emphasis added). The Sixth Circuit "has described the status quo to be preserved or restored as that which existed before the alleged unfair labor practices took place." *Muffley v. Voith Indus. Servs., Inc.*, 551 F. App'x 825, 834 (6th Cir. 2014). In this case, the Alleged Discriminatees were separated when there was open Union support in the store, but there had not yet been an election. This was the status quo to which the Court's Order should be trying to return. Since the instant petition was filed, the situation at the Memphis Store has materially changed—there has been an election in which the Union prevailed by a wide margin, the results have been certified, and partners at the Memphis Store are represented by the Union and in the bargaining process. A return to the status quo which existed before is therefore *no longer possible*, as the Court tacitly acknowledged by premising its just and proper finding on the purported harm that will befall the bargaining process absent injunctive relief.[3] Doc. 86 at 43.

---

[3] Relying on this justification is also improper because this was not the Board's theory of the case upon filing the petition—the Board predicated its petition on the overall erosion of Union support in the Memphis Store and nationwide and must therefore establish that an injunction is proper on

Finally, the Court's Order fails to address the extraordinary nature of Section 10(j) relief and does not explain why this extraordinary relief is necessary in this instance to protect the Board's remedial powers under the NLRA. *See e.g., Voith Indus. Servs., Inc.*, 551 F. App'x at 836 (upholding a denial of Section 10(j) relief when the Board failed to establish that without interim injunctive relief union support would "erode to the point that the Board will be unable to adequately remedy the harm resulting from the alleged unfair labor practices."). Courts have emphasized that "care must be taken" by the district courts under Section 10(j) so that it "remains an extraordinary remedy, to be requested by the Board and granted by a District Court only under very limited circumstances." *See, e.g., NLRB v. Hartman and Tyner, Inc.*, 714 F3d 1244, 1249 (11th Cir. 2013). And, in particular to reinstatement, courts have made clear that the fact of unfair labor practices and a finding of reasonable cause is not determinative of whether reinstatement should be ordered. Again as said in *Hartman and Tyner*, reinstalment is "a particularly drastic remedy" and "reinstatment of unlawfully discharged employees…. [is] a matter generally left to the administrative expertise of the Board." *Id.* (citing *Boire v Pilot Freight Carriers, Inc.,* 515 F.2d 1185, 1192 (5th Cir. 1975)). This is so here where the Memphis Store partners have voted to unionize and a bargaining committee has been formed that includes, among others, the Alleged Discriminates.

---

those grounds. Doc. 1-3 at 27-28 (focusing on the harm the discharges allegedly had on Union support in the store). Recognizing it could no longer justify an injunction on these grounds after partners at the Memphis Store clearly demonstrated that Union support in the store has not eroded and the pace of petitions continued unabated, the Board pivoted during the proceedings to focus on bargaining at the Memphis Store.

8

### B. The Balance of Hardships Weighs Heavily in Favor of a Stay.

#### 1. There Is a Likelihood of Irreparable Harm to Starbucks Absent a Stay.

As a general rule, an irreparable harm is one which is not compensable by monetary damages. *Overstreet v. Lexington-Fayette Urban County*, 305 F.3d 566, 578 (6th Cir. 2002). However, in certain circumstances, monetary harm may constitute an irreparable injury. First, incurring monetary costs may constitute irreparable harm when the costs are non-recoverable. *See, e.g., Concerned Pastors for Soc. Action v. Khouri*, 844 F.3d 546, 555 (6th Cir. 2016) (" These non-recoverable losses of money, time, and resources strongly favor a stay."). Second, monetary loss may constitute irreparable harm when "the nature of the [moving party's] loss would make the damages difficult to calculate." *Certified Restoration Dry Cleaning v. Tenke*, 511 F.3d 535, 550 (6th Cir. 2007) (quoting *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)).

Here, requiring Starbucks to reinstate the Alleged Discriminatees will cause it irreparable harm in several ways. Starbucks will suffer harms the monetary value of which will be incalculable from having to reemploy partners who are antagonistic to Starbucks as a whole and to the Memphis Store and its leadership, specifically. The Alleged Discriminatees have consistently demonstrated their disrespect and animus to Starbucks in the time since their separation. They have publicly disparaged the Company in the press and online.[4] Sanchez and McGlawn have beat an effigy of

---

[4] For example, Beto Sanchez frequently posts profane and opprobrious comments about Starbucks that go beyond matters of labor relations and reflect an intense dislike and hatred of the Company. @Beibangwen, Twitter, (Aug. 11, 2022, 1:05) ("Quit fucking acting like you suddenly give a shit, it's a fucking smack to the face to every worker in the thread that DID contact your ass and you, Partner Resources, and the rest of the clown car company didn't do jack shit"), https://mobile.twitter.com/beibangwen/status/1557790255167770624; @Beibangwen, Twitter, (Aug. 18, 2022, 2:11) (linking to a Starbucks statement with the comment "in case anyone wants to watch a fortune 100 company pissing and shitting and crying"), https://mobile.twitter.com/beibangwen/status/1560343703427993601.

Howard Schultz with a baseball bat in front of Schultz's New York apartment.[5] It is uncontroverted that they called Store Manager Page "Elizabitch," and called District Manager Morton a "diversity hire," which is clearly a race-based insult. Doc. 75 at 227:4-9; Ex. 21 at 27:6-28:18. Such language is offensive, a form of harassment, and would be inappropriate in any workplace. This behavior in no way lives up to the standards Starbucks holds its partners to and, most importantly to this motion, demonstrates a lack of respect for Starbucks leaders that will make their reemployment fraught at best. Further, the Alleged Discriminatees have shown no signs that this attitude or behavior will stop should they be reinstated. When the Alleged Discriminatees speak of Starbucks, they use profane, venomous and confrontational language. Because of the small number of partners and close working conditions, introducing seven people whose antagonism exceeds the bounds of normal labor management differences will disrupt working conditions for all concerned. Being required to employ the Alleged Discriminatees, even for a brief period of time, will therefore be detrimental to Starbucks' business in ways which will be difficult to quantify.

Moreover, reinstating the Alleged Discriminatees should they choose to accept the offer of employment would result in a serious disruption to the operations of the Memphis Store. The store currently has thirty-four partners. Based on the store's performance, it is fully staffed. If all seven of the Alleged Discriminatees return to the store, the store will have a twenty percent increase in staff overnight. This is not sustainable and, thus, if the Alleged Discriminatees accept the offer of employment, Starbucks will be forced to displace current partners.[6] This loss of current worker's

---

[5] Monica Moorehead, Workers World, WW Speaks with Fired Starbucks Workers: 'We Were Able to Stoke the Fires of Workers Everywhere' (May 9, 2022), https://www.workers.org/2022/05/63983/.

[6] Of course, Starbucks could also temporarily operate the store with too many partners, but without the business volume to support a twenty percent increase in staffing levels, Starbucks will not be able to provide partners (some of whom also voted in favor of the Union) the hours they desire and have been receiving at the Memphis Store. This is especially so because the Court's Order

knowledge, skill, and relationship with customers, is a cost in and of itself to Starbucks. *NACCO Materials Handling Grp., Inc. v. Toyota Materials Handling USA, Inc.*, 246 F. App'x 929, 944 (6th Cir. 2007) (upholding a finding of irreparable harm when "the revenue and profitability generated by employees in whom Lilly had invested could not be easily calculated or compensated with monetary relief.").

A rotation of such a large percentage of the store's workers will undoubtedly disrupt the Memphis Store's business. Absent a stay, there is a serious risk that the Memphis Store will be forced to undergo this difficult transition *twice* in a period of months—first when the Alleged Discriminatees accept employment at the Memphis Store and a second time when Starbucks is successful on appeal and the Alleged Discriminatees must again be replaced. This disruption and uncertainty will negatively impact the work environment and partner morale which will in turn affect the Memphis Store's customers.

In addition, Starbucks will incur monetary costs of reemploying up to seven employees, including the administrative costs of onboarding partners, retraining the partners as they have now been out of work for six months, the cost of hiring seven more partners should Starbucks prevail on appeal, and the costs Starbucks will incur in unemployment benefit liabilities for the current partners the Alleged Discriminatees will displace.

In short, requiring Starbucks to rehire the Alleged Discriminatees is infeasible at this point based on their own post-separation actions. Managing these partners would be challenging at best

---

seemingly requires Starbucks to give the Alleged Discriminatees preferential treatment in the form of guaranteeing them the same hours they had when there were less partners at the Memphis Store. As demonstrated by the numerous unfair labor practice charges related to partner hours, partners feel strongly about their schedules and will understandably be upset if their hours are reduced to accommodate additional workers. Thus, even if only for the short period of appeal, complying with the Court's injunctive order will disrupt operations at the Memphis Store and sew discontent among its workers which is yet another harm that is difficult to quantify monetarily.

and impossible at worst. Their presence will disrupt the store's operations and depending on how many of the Alleged Discriminatees seek reinstatement, will force Starbucks to displace current partners, many of whom have built relationships with current patrons of the store. This disruption in such a large portion of the Memphis Store's staff will disrupt the Starbucks experience customers expect from the Memphis Store. This will result in a loss of goodwill among the Memphis Store's patrons which is yet another irreparable harm. *Certified Restoration Dry Cleaning*, 511 F.3d at 550 ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute.") (quoting *Basicomputer Corp.*, 973 at 512). And when Starbucks prevails on appeal, it will be forced to undergo this same severe disruption in staffing *twice in two months*, effectively doubling the loss of goodwill Starbucks stands to suffer absent a stay.

## 2. The Prospect of Harm to Others from a Stay Is Low.

Importantly, the prospect of harm to the Alleged Discriminatees and the Union is low. First, while Starbucks cannot recover any of the costs it will incur temporarily reinstating the Alleged Discriminatees should it be successful on appeal, the Alleged Discriminatees will be able to recover back pay for the pendency of the appeal should the Board ultimately order backpay and reinstatement in the pending administrative charges which are now set for a hearing beginning on September 12, 2022.

In fact, there is a significant risk of harm to the Alleged Discriminatees if the injunction is *not* stayed pending appeal. The Alleged Discriminatees have now been out of work at Starbucks for over six months. Many now have a new job. If the Alleged Discriminatees accept the ordered offer of reinstatement to the same number of hours they worked prior to their separation, they will likely need to quit any job they acquired to replace their income from Starbucks. Thus, if Starbucks

is successful on appeal and the Court's order of reinstatement is reversed, not only will the Alleged Discriminatees no longer have a job at Starbucks, but they will also no longer have the job they obtained after working at Starbucks. This would plainly leave the Alleged Discriminatees in a worse place than they would have been if the Court stayed its Order pending appeal.

Second, the risk of harm to the Union by a brief stay is low. The Alleged Discriminatees have already been absent from the Memphis Store for over six months and yet the Union successfully maintained support, secured an election victory, and began the bargaining process. The Alleged Discriminatees are also already exercising their legal right to actively participate in this process despite not being employed by Starbucks. The record evidence also shows that the Alleged Discriminatees are already in close contact with partners at the Memphis Store and therefore are not currently hindered in their bargaining efforts. Additionally, given that first-contract bargaining is a lengthy process that has just begun, a brief additional delay in reinstating the Alleged Discriminatees to the Memphis Store (should the Sixth Circuit affirm this Court's Order) will not make a meaningful difference in the overall bargaining process.

Finally, there will also be harm to the current partners at the Memphis Store absent a stay. As explained above, Starbucks will be forced to choose between separating partners to accommodate the Alleged Discriminatees during the pendency of appeal or reducing the hours of all partners to accommodate the large increase in staffing. This will harm the current workers in the form of disruption to schedules and reduced pay, possibly even causing some to fall below the threshold needed to qualify for benefits from the Company.

### 3. A Stay Is in the Public Interest.

Staying the injunctive order for the pendency of appeal is also in the public's interest. Because the Board is tasked with enforcing the Act which sets forth the policy of the United States,

the Board's and the public's interest's merge. *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)) ("the harm to the opposing party and the public interest factors 'merge when the Government is the opposing party.'"). In this case, the Board's own actions demonstrate that the public will suffer no harm from an additional brief delay. The Alleged Discriminatees in this matter were separated on February 8, 2022.[7] The theory underlying Section 10(j) relief is that immediate relief is necessary to "preserve the status quo, pending final Board adjudication [as] may be required to avoid frustration of the basic remedial purposes of the Act and possible harm to the public interest." *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 29 (6th Cir. 1988). Yet the Board did not so much as file the motion for Section 10(j) relief until May 10, 2022, some three months after the separations. That the Board would wait this long to even seek Section 10(j) relief undercuts any potential argument that a brief additional stay would be detrimental.

        **C.    Absent a Stay of the Entire Order, the Court Should Modify the Injunctive Relief Pending Appeal.**

Under Federal Rule of Appellate Procedure 8(a)(1)(C) and Federal Rule of Civil Procedure 62(d), a district court is permitted to modify an injunction while an appeal is pending. In the event the Court does not grant Starbucks' motion for a stay of the Order, modifying the injunction to extend the compliance deadlines by 14 days to allow for appeal is warranted for the reasons stated above. This brief and reasonable extension will cause no additional harm to the parties or the public, will prevent confusion, and reduce the risks to the Alleged Discriminatees of accepting

---

[7] Notably, the Union filed its unfair labor practice charge related to the separations on February 9, 2022, the day after the separations. Starbucks filed a statement of position responding to the allegations on March 23, 2022. The Board issued a complaint on April 8, 2022 yet still did not file a Section 10(j) petition for over a month, so the delay is wholly attributable to the Board.

14

Starbucks' offer of employment without a guarantee that they will hold that job after the Sixth Circuit considers Starbucks' motion to stay pending appeal.

## III.    CONCLUSION

An appeal of the Court's injunctive relief will not likely take long. Given the six months the Alleged Discriminatees have already spent separated from Starbucks and Starbucks's likelihood of success on the merits of its appeal, the equities strongly weigh in favor of allowing an additional short delay during the pendency of Respondent's appeal. A stay would prevent the loss of non-recoverable monetary damages, the loss of goodwill, and the loss of current partners that would come from temporarily reinstating the Alleged Discriminatees should Starbucks prevail on appeal of the Court's order. It would prevent the Alleged Discriminatees from being forced to choose between a potentially short-term reinstatement at Starbucks and their current permanent jobs. It would prevent harm to the current Memphis Store partners who stand to lose their job at Starbucks, either temporarily or permanently, should the Alleged Discriminatees accept the reinstatement offer. Conversely, the Union and the Board would not suffer harm from an additional short delay. The balance of equities therefore weighs heavily in favor of a stay, and the Court should stay its Order pending the outcome of Respondent's appeal to the Sixth Circuit.

Respectfully submitted this 21day of August 2022.

| | |
|---|---|
| Timothy A. Rybacki<br>Tennessee Bar No. 034038<br>trybacki@littler.com<br>LITTLER MENDELSON, P.C.<br>333 Commerce Street, Suite 1450<br>Nashville, Tennessee 37201<br>Telephone:  615.383.3033<br>Facsimile:   615.383.3323<br><br>A. John Harper III<br>Texas Bar No. 24032392 | */s/  Arthur T. Carter*<br>Arthur T. Carter<br>Texas Bar No. 00792936<br>*pro hac vice granted*<br>atcarter@littler.com<br>LITTLER MENDELSON, P.C.<br>2001 Ross Avenue<br>Suite 1500, Lock Box 116<br>Dallas, Texas 75201-2931<br>Telephone:  214.880.8100<br>Facsimile:   214.880.0181 |

*pro hac vice granted*
ajharper@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:  713.951.9400
Facsimile:   713.951.9212

Kimberly Doud
Florida Bar No. 0523771
*pro hac vice granted*
kdoud@littler.com
LITTLER MENDELSON, P.C.
Elizabeth B. Carter
Florida Bar No. 1032303
*pro hac vice granted*
111 North Orange Avenue, Suite 1750
Orlando, Florida 23801
Telephone:  407.393.2900
Facsimile:   407.393.2929

**ATTORNEYS FOR RESPONDENT STARBUCKS CORPORATION**

## CERTIFICATE OF SERVICE

I certify that the foregoing document has been electronically filed with the Clerk of the Court by using the CM/ECF system, which will in turn send a notice of the electronic filing to all counsel of record, on this 21 day of August 2022.

/s/ Arthur T. Carter

4889-8215-7610.5 / 055187-1256